## STATE ex GUSTAFSON v KRAUSE et

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided April 20, 1936

Arthur P. Gustafson, Cleveland, for plaintiff.

Frank T. Cullitan, Prosecuting Attorney, Cleveland, for defendant.

## OPINION

By GUERNSEY, J.

This is an action in mandamus brought in this court by the state of Ohio on the relation of Arthur P. Gustafson against John Krause, Mary L. Forrest, William Murphy and Felix Matia, as members of the board of elections of Cuyahoga County, Ohio; George S. Myers, secretary of state, as state supervisor of elections, and John W. Bricker, attorney general of the State of Ohio. The prayer of the petition is that a writ of mandamus issue against the defendant, George S. Myers, secretary of state, as state supervisor of elections and against the defendants who comprise the board of elections of Cuyahoga County, Ohio, commanding them and each of them to accept and file, for all purposes, the declaration of candidacy of the relator for the office of judge of the Common Pleas Court for the full term, other than the term commencing February 9, 1937, and the petition accompanying the same bearing signatures of more than one hundred electors of the Republican party, presented by relator to said board of elections, and further commanding said defendants, and each of them, to place or cause to be placed upon the primary ballot the name of relator as candidate for the office of judge of the Common Pleas Court without requiring said candidate to designate any particular office of or

to distinguish between any one or more of the seven offices to be filled to succeed those offices expiring December 31, 1936; and that the defendant, George S. Myers, be commanded to issue appropriate instructions to the board of elections in connection therewith; and for such other and further relief as may be proper.

This cause is submitted to this court upon the petition of the relator and the answer of said board' of elections thereto, no evidence being offered by any of the parties.

The sole question presented by pleading is whether the provisions of House Bill Number 652 enacted by the General Assembly, and signed by the governor of the state of Ohio and filed with the secretary of state on March 11, 1936, insofar as they relate to the judges of the Common Pleas Court of Cuyahoga County, are constitutional. If such provisions are constitutional, §§1532 and 1532-11 GC as they existed on March 11, 1932, have been repealed by said House Bill, and the relator is not entitled to the writ of mandamus. On the other hand, if such provisions are not constitutional, said §§1532 and 1532-11 GC as they existed on March 11, 1936, remain unrepealed and in full force and effect and the relator is entitled to the relief prayed for in his petition.

In order to determine this question it will be necessary to consider the provisions of the Constitution applicable thereto as well as the provisions of original §§1532 and 1532-11 GC, purporting to be repealed by said House Bill and the provisions of said House Bill.

The provisions of the Constitution of Ohio pertinent to the question are as follows:

"**Article 1, §2:** All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked or repealed by the General Assembly.

"**Article 1, §20:** This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers not herein delegated, remain with the people.

"**Article IV, §1.** The judicial power of the state is vested in a Supreme Court, Courts of Appeals, Common Pleas Courts, Probate Courts and such other courts inferior to the Courts of Appeals as may from time to time be established by law.

"Article IV, §3. One resident judge of the Common Pleas Court, and such additional resident judge or judges as may be provided by law, shall be elected in each county of the state by the electors of such county; and as many courts or sessions of the Common Pleas Court as are necessary may be held at the same time in any county.

"**Article IV, §4.** The jurisdiction of the Common Pleas Courts, and of the judges thereof, shall be fixed by law.

"**Article IV, §12.** The judges of the Common Pleas Courts shall, while in office, reside in the county for which they are elected, and their term of office shall be for six years.

"**Article IV, §15.** Laws may be passed to increase or diminish the number of judges of the Supreme Court, to increase beyond one or diminish to one the number of judges of the Common Pleas Court in any county, and to establish other courts, whenever two-thirds of the members elected to each house shall concur therein; but no such change, addition or diminution shall vacate the office of any judge; and any existing court heretofore created by law shall continue in existence until otherwise provided."

The pertinent parts of §§1532 and 1532-11, GC, as they existed prior to March 11, 1936, are as follows:

"**Sec 1532 GC.** Common Pleas Court in each county. Qualifications of judges; election, term. There shall be a Common Pleas Court in each county of the state, held by one or more judges, each of whom shall have been admitted to practice as an attorney and counsellor-at-law in this state for a period of six years, immediately preceding his appointment or election, residing in said county and elected by the electors thereof. Each judge shall hold office for six years, and his successor shall be elected at the election in the even numbered year next preceding the expiration of his term. Each judge heretofore elected as a judge of a Common Pleas district or county shall serve as a judge of the Common Pleas Court of the county of which he was a resident at the time of his election.

"**ELECTION TO FILL VACANCY.** Provided that when a vacancy may have occurred in the office of any judge of the Common Pleas Court, in office or elected thereto prior to January 1, 1913, his successor shall be elected for the unexpired term at the first annual election that occurs in an even numbered year more than thirty days after such vacancy may have occurred, and such election shall be by the

qualified electors of the county in which the judge, whose office became vacant, resided at the time of his election.

"TIMES OF ELECTION IN THE COUNTIES AND BEGINNING OF TERMS. The times for the next election of Common Pleas judges in the several counties and for the beginning of their terms, shall be as follows:

"In Cuyahoga County, in 1920, four judges, terms to begin in January 1, 1921; in 1922, three judges, terms to begin January 1, 1923, and in 1918, five judges, the terms of four to begin January 1, 1919, and the term of one to begin February 9, 1919.

"Sec 1532-11 GC. THREE ADDITIONAL JUDGES FOR CUYAHOGA COUNTY. From and after the passage and taking effect of this act there shall be three additional judges of the Common Pleas Court in and for Cuyahoga County, Ohio, who shall reside therein, in addition to the judges hereinbefore provided for in §1532, GC, for Cuyahoga County."

The pertinent parts of House Bill No. 652, are as follows:

"Section 1. There shall be a Common Pleas Court in each county of the state held by one or more judges, each of whom shall have been admitted to practice as an attorney and counsellor at law in this state for a period of at least six years immediately preceding his appointment or commencement of his term, residing in said county and elected by the electors therein. Each judge shall be elected for six years at the general county election next preceding the year in which the term, as hereinafter provided, shall commence, and his successor shall be elected at the general county election next preceding the expiration of such term. Each judge heretofore elected as a judge of the Common Pleas Court shall continue to serve as judge of said court until the expiration of his term of office; provided, however, that any vacancy which has occurred, in any office of judge of said Common Pleas Court, the term of which office has not expired, and which vacancy has not yet been filled in the manner provided in §141, GC, and any vacancies which may hereafter occur, in each instance shall be filled in the manner provided in said §141, GC. The number of judges for each county, the time for the next election of said judges in several counties, and the beginning of their terms shall be as follows:

"In Cuyahoga County, 15 judges. The terms of seven of said judges shall commence January 1, 1937, January 2, 1937,

January 3, 1937, January 4, 1937, January 5, 1937, January 6, 1937, and January 7, 1937, respectively. Said seven judges shall be elected in 1936.

"The term of another said judge shall commence February 9, 1937; said judge to be elected in 1936.

"The terms of four of said judges shall commence January 1, 1939, January 2, 1939, January 3, 1939, and January 4, 1939 respectively. Said four judges shall be elected in 1938.

"The terms of three of said judges shall commence January 1, 1941; January 2, 1941 and January 3, 1941, respectively. Said three judges shall be elected in 1940.

"Section 2. That §1532 and §§1532-1 to 1532-12, GC, both inclusive, be, and the same are hereby repealed."

Under the provisions of Article 1, §20, of the Constitution the legislature is authorized to exercise only such powers as are delegated to it in the constitution or as are necessary and proper for carrying into execution the delegated powers. State ex Pierce, 96 Oh St 44, 46, 47.

In the case of State ex Handy, 51 Oh St 204, it was held under constitutional provisions similar to those above set forth except that the term of office of judges of the Common Pleas Court was fixed at five years, that the legislature has full power, where it creates an additional judgeship, to fix a date at which his office shall begin; and by virtue of the constitution he will hold his office for five years from the date so fixed and the term of all his successors will begin on the same date of the same month in the proper year.

Considering the constitutional provisions above set forth, in the light of these authorities, it is clear that the legislature has only such power over increasing beyond one or diminishing to one, the number of judges of the Common Pleas Court in any county as is conferred by Article IV, §15, above quoted. This power, however, is not limited by the terms of said section except in the following particulars:

1. That it can be exercised only with the concurrence of two-thirds of the members elected to each house.

2. That no change, addition or diminution shall vacate the office of any judge.

3. That any existing court heretofore created by law shall continue in existence until otherwise provided.

The only other constitutional limitation on the power of increasing or diminishing the number of judges, conferred by Article

IV, §15, appears in **Article IV, §12,** which provides that the term of judges of the Common Pleas Court shall be for six years.

Under **Article IV, §15,** the legislature has unlimited power whenever two-thirds of the members of each house shall concur therein, to increase beyond one or diminish to one the number of judges of the Common Pleas Court of any county, provided no such change, addition or diminution shall vacate the office of any judge, and the term of an additional judge shall be for six years.

When an additional judgeship is created in the exercise of this power, the office is a legislative and not a constitutional office and is not subject to the rule of continuity applicable to constitutional offices. In fact the legislature under the power to diminish, has express authority upon the required concurrence of its members, to abolish the continuity of the office created by it at any time, provided that such abolishment shall not vacate the office of the incumbent judge.

Under the broad power conferred on it by the section last mentioned, the legislature in the first instance in addition to fixing the dates of the commencement of the terms of additional judges, could have provided that any additional judgeship created by it should expire upon the expiration of six years from the commencement of the terms of such judgeships and could as a part of the same act have provided for the creation of additional judgeships with terms to commence prior to, at or subsequent to the expiration of the other judgeship created by it. And the power of the legislature in this respect being continuing it could provide by amendment or repeal provisions which it had authority to adopt in the first instance.

We will now consider whether the provisions of House Bill No. 652, constitute an exercise of the power conferred on the legislature.

An examination of the provisions of the Bill, insofar as they relate to the Common Pleas judges of Cuyahoga County, discloses that it does three things:

1. As to the constitutional judgeship, it provides for the election of a successor to the existing judge and fixes a time for the beginning of the term of such successor coincident with the expiration of the term of the present incumbent.

2. It repeals all laws providing and creating judgeships in addition to those required by the constitution and further provides in conformity with the limitation contained in **Article IV, §15, of the Constitution**

that all such judges heretofore elected shall continue in office until the expiration of their respective terms.

3. It creates and establishes in Cuyahoga County a large number of judgeships in addition to the constitutional office and fixes the time of the beginning of the terms of said respective additional offices at various dates, and provides for election thereto.

The number and the commencement of the terms of the additional judgeships is such that at certain intervals during the period in which the terms of such additional judgeships commence, there will be fewer judicial incumbents than were provided for in the repealed law, and after the term of all the additional judges have commenced, the number of judges will be the same as it would have been under the repealed law.

It is urged by the relator that the powers conferred upon the legislature by the provisions of **Article IV, §15 of the Constitution** were not exercised by the act, or in other words that the power to increase or diminish the number of judges is the only power given, but that it was not the power exercised; that in fact it was the only thing done by the act was to alter the time of the beginning of the respective terms of office and that such matter was not within the power of the legislature; and it is further urged by the relator that as the power to increase and the power to decrease the number of judges was exercised in the same Act, the exercise of one power nullified the exercise of the other power and for this reason the number of judges was not either diminished or increased.

The legislature did in fact repeal the statutes by virtue of which all the "additional" or "increased" number of judgeships in Cuyahoga County existed. The power to do this is specifically granted to the legislature by said section. By this repeal the number of judges was diminished.

Under the terms of the House Bill the terms of seven judges of the Common Pleas Court of Cuyahoga County will expire on December 31, 1936. On January 1, 1937, under the terms of the Act only one judge will take office, so that at that time there will be six less judges for Cuyahoga County than there would have been if §§1532, 1532-1 to 1532-12 GC, both inclusive, had not been repealed, and not until January 7, 1937, under the terms of said House Bill, will there be as many judges in the Common Pleas Court as on December 31, 1936, and on that date there will be but

seven of the total number of judges whose right to hold office is derived from this Act. The remaining judges, except the judge occupying the constitutional term, continue in office not by force of such repealed statute but purely by reason of the constitutional provision that "no change, addition or diminution shall vacate the office of any judge" incorporated in such Act, and when such judges have served their respective terms the office held by them is at an end and there can be no successor thereto.

The number of judges were diminished as a matter of law by the passage of the repeal provision of the Act and is diminished as a matter of fact during the intervals elapsing between the expiration of the terms of the incumbent judges, preserved to them by the constitutional provision, and the commencement of the terms of the judges created by said Act.

While the number of judgeships which Cuyahoga County will have upon the commencement of the terms of all the judgeships created by the act is identical with the number of judgeships it had under the repealed statutes, there is a variance in the number of judges and in the number of judgeships existing at various intervals under the new Act, from the number prescribed in the repealed statutes, so that the Act does provide for both the diminution and increase in the number of judges taking effect at different times. As the exercise of the power to diminish and the exercise of the power to increase became effective at different intervals, neither nullified the other.

Furthermore, as the legislature is vested with constitutional power to create additional judgeships, to fix the date of the commencement of the terms of such judgeships, and to terminate such judgeships, and as the offices created are legislative and not constitutional and there is no requirement of continuity, and there is no limitation on the continued exercise of powers conferred on the legislature, the legislature had constitutional power to terminate judgeships previously created and to create judgeships, the terms of which commence on dates different from the terminated judgeships, irrespective of whether the number of judges is thereby increased or decreased or remain the same so long as it did not vacate the terms of incumbent judges.

For the reasons mentioned we hold that the provisions of the House Bill are a proper exercise of the constitutional power delegated to the legislature by **Article IV, §15 of the Constitution.**

As the terms of the created judgeships, begin on different dates, it is necessary and proper that candidates for such offices designate in their declarations of candidacy, the office for which they are candidates, by date of the commencement of the term, and the House Bill does not contravene the provisions of §2 of **Article 1 of the Ohio Constitution** by depriving a candidate and the electors of equal protection and benefits of the laws which are guaranteed by said Article and does not come within the rule announced in the case of **State ex v Bernon et, 124 Oh St 294.**

The provisions of the House Bill are therefore constitutional and being constitutional, the relator is not entitled to the relief prayed for, and judgment will be entered dismissing his petition at his costs.

KLINGER, PJ, concurs.

CROW, J, dissents.

### DISSENTING OPINION

By CROW, J.

For both interpretative and constitutional reasons the attempted changes in the time for the beginning of the terms, must be held ineffectual.

Of transcendent importance are these plain words of the legislative act in controversy which I will call the Act: "In Cuyahoga County, fifteen judges."

Directly conflicting with that language definitely fixing the number of the judgeships at fifteen are the words which would create six hiatuses pertaining to the terms of the seven judges to be elected in 1936, three hiatuses pertaining to the terms of four of the judges to be elected in 1938, and two hiatuses pertaining to the terms of three of the judges to be elected in 1940.

Each of said hiatuses if given effect according to the terms of the act would in fact leave Cuyahoga County with fewer judges than the fifteen, which number, we emphasize, the Act provides for absolutely.

In every enactment providing for additional judgeships in Cuyahoga County, the commencement of the terms has been January first, and there has been no instance of decrease.

The number of judgeships, fifteen, for Cuyahoga County, was precisely the same when the act took effect as it was before that time.

The rule governing that situation is perfectly stated in Lewis' Sutherland Statutory Construction, Second Edition, §238:

"Section 238. REPEAL AND RE-ENACT-MENT—CONSTRUCTION AND EFFECT. Where, there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and a re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time."

Which of those two conflicting provisions clearly irreconcilable, must fall, the paramount one establishing fifteen judgeships in harmony with the public policy reflected by the former statutes on the subject or the unsubstantial and absurd one whose only purpose is to disturb the dates for the commencement of the terms? Manifestly this is not an instance of total conflict nor is it one of equality of scope, and hence the doctrine of position of conflicting provisions, does not apply.

Therefore I would hold that the paramount provision prevails over and engulfs the other one. Lewis' etc. supra page 669. Otherwise, there would not be fifteen judges all the time until January 3, 1941.

The constitution of Ohio has definitely marked the power of the legislature in respect of membership of the Courts of Common Pleas, which is to increase beyond one or diminish to one the number of judges in any county. Implied in that power is authority when the number of judges has been increased to fix the time or times for the commencement of the term or terms. Once exercised, such implied authority exhausts itself and consequently cannot be again exercised, though such judgeship or judgeships may be abolished under the power to diminish the number.

Judgment therein should be for the relator.